(May 23, 1912.)

# LAWRENCE F. CONNOLLY and JOHN J. CONNOLLY, Plaintiffs, v. BERT A. REED, as Probate Judge of Kootenai County, Defendant.

### [125 Pac. 213.]

SETTLEMENT OF ESTATES—SUCCESSION—SUCCESSION BY NONRESIDENT ALIENS—LIMITATION OF SUCCESSION—APPEARANCE AND CLAIM OF SUCCESSION.

(Syllabus by the court.)

1. Under the provisions of sec. 5715 of the Rev. Codes of this state, "Aliens may take in all cases by succession as citizens," provided, however, that "no nonresident foreigner can take by succession, unless he appears and claims such succession within five years after the death of the decedent to whom he claims succession."

2. Under the statute of this state (sec. 18, Rev. Codes) the common law of England, so far as it is not repugnant to or inconsistent with the constitution or laws of the United States, is the law of this state in all cases not provided by statute.

3. At common law an alien had no inheritable blood and could not succeed to real property by descent or inheritance, and could not therefore claim through an intestate.

4. The statute of this state (sec. 5715) is not a recognition or an extension of any previously existing right which a nonresident alien had of succeeding by inheritance to the estate of a deceased person, but is rather the grant of a right which did not previously exist.

5. In order for a nonresident alien to succeed to the estate of an intestate decedent in this state, he must appear and claim such succession within five years after the date of the death of the decedent.

6. Where C. died intestate, leaving an estate within the state of Idaho, and a cousin of the decedent made application for letters of administration and represented that he and three other cousins were the next of kin and entitled to succeed to the estate, and letters of administration were granted, and the estate was administered upon and final account was rendered and approved and distribution ordered and made to the four cousins who claimed to be the next of kin and the right to succession, and thereafter and more than five years subsequent to the death of the decedent M., a citizen and resident of Galway, Ireland, of the kingdom of Great

Argument for Applicants.

Britain, filed a petition in the probate court alleging that she was the half-sister of the decedent and entitled to the estate; *held,* that her failure to appear and claim her right to succession within the five-year period granted by statute bars her right and claim, and the court had no jurisdiction to grant her any relief.

7. A demand made through an attorney or agent upon an administrator for possession of the property of the estate which he represents, or a request made by an attorney of the judge of the probate court that he be notified if any further proceedings are to be taken in the estate, is not an appearance or claim within the purview and meaning of sec. 5715 of the Rev. Codes sufficient to stop the running of the statute limiting the time within which such claim of the right of succession shall be made by a nonresident alien.

8. The commencement of an action by a nonresident alien in the federal court in and for the district of Idaho, which action is subsequently dismissed by the court, does not stop the running of the statute in the state courts.

9. An allegation by a nonresident alien, who seeks to establish her right of succession to the estate of a decedent within this state, alleging that C., by fraudulent misrepresentation, procured the distribution of the estate to himself and others, is not a sufficient allegation to show any wrong or injury to the alien claimant who failed and neglected to appear and claim the right of succession within the five-year period granted to such claimants, where it is not alleged and does not appear that the fraud had anything to do with or resulted in preventing or depriving the nonresident alien claimant from setting up or asserting her claim to the property within the statutory time.

Original action for a writ of prohibition. Writ ordered.

C. W. Beale, C. L. Heitman, and R. T. Morgan, for Applicants.

A nonresident foreigner cannot take by succession under the provisions of sec. 5715, unless he appears and claims succession within five years after the death of a decedent. (*State v. Stevenson,* 6 Ida. 367, 55 Pac. 886. See, also, *State v. Lyon,* 67 Cal. 380, 7 Pac. 763, construing sec. 1404 of the Civil Code of California, which is just the same as our section 5715.)

Appearance in the federal court without jurisdiction never stops the running of the statutes of limitation. (*Finney v.*

*American Bonding Co.,* 13 Ida. 534, 90 Pac. 859, 91 Pac. 318;
*Mills v. American Bonding Co.,* 13 Ida. 556, 91 Pac. 381;
*Morbeck v. Bradford-Kennedy Co.,* 19 Ida. 83, 113 Pac. 89.)

Neither the petition nor amended petition, when tested by
the rule of this court in the case of *Abrams v. White,* 11 Ida.
.497 (83 Pac. 602), as announced at pages 502 and 503, con-
tain any allegations or statements sufficient to constitute fraud.

In the absence of any affidavit and showing of merits and
mistake, inadvertence, surprise or excusable neglect, the
judgment of dismissal should not and could not be set aside.
(*Holzeman v. Henneberry,* 11 Ida. 428, 83 Pac. 497.)

Elder & Elder, for Defendant.

''No statutory machinery is provided in accordance with
which the alien must appear and give notice of his claim.
The provisions of sec. 672 of the Civil Code, requiring the
alien to 'appear and claim the property,' relates to an ap-
pearance and claim to be proved by acts within the state,
indicating that the alien asserts a right to it, or the pro-
visions mean nothing.'' (*State v. Smith, Jr.,* 70 Cal. 153,
12 Pac. 121; *Billings v. Hauver,* 65 Cal. 593, 4 Pac. 639.)

As this construction had been placed upon this statute by
the supreme court of California prior to the adoption of
said statute by our legislature, under the rule adopted by
this court in the case of *Stein v. Morrison,* 9 Ida. 426, 75
Pac. 246, to the effect that when a statutory provision is
adopted from another state where the courts of that state
have placed a construction upon the language of such stat-
ute, it is to be presumed that it was taken in view of such
judicial interpretation and for the purpose of adopting the
language as the same had been interpreted and construed by
the courts of the state from which it was taken. The decision
of the supreme court of California and its interpretation of
the phrase ''appear and claim'' is binding upon this court.

A motion to set aside a judgment on account of fraud need
not set out an affidavit of merit. (*Crescent Canal Co. v.
Montgomery,* 124 Cal. 134, 56 Pac. 797.)

AILSHIE, J.—This is an application for a writ of pro-
hibition against the judge of the probate court of Kootenai
county. Plaintiffs pray that a writ issue prohibiting any
further action or proceedings by the probate court on the
petition of Bridget Madden heretofore filed in that court.
It was agreed on the hearing that the names of Wm. C. Con-
nolly and Ellen Udell should be added as parties to the ac-
tion and be bound by the decision herein. The facts neces-
sary to an understanding of this case and on which the
decision must turn are as follows:

John Corbett, a resident of Kootenai county, died intestate
on the 30th day of January, 1907, leaving an estate variously
estimated at from twenty thousand to seventy-five thousand
dollars. Thereafter and on February 20, 1907, Lawrence F.
Connolly procured letters of administration of the Corbett
estate. Upon securing his appointment as administrator,
Connolly represented to the court that he and one John J.
Connolly, residing at Harrison, Idaho, and William C. Con-
nolly and Ellen Udell, residing at Greeley, Nebraska, were
the surviving heirs of John Corbett, deceased. The estate
was thereafter appraised, and on March 7, 1907, an inventory
and appraisement was filed with the probate court. Such
proceedings were had in conformity with the statute, that
thereafter and on August 23, 1909, a decree of settlement of
final account and distribution was made and entered. The
estate was accordingly distributed to the Connollys and their
sister, Ellen Udell. On February 28, 1912, Bridget Madden,
a nonresident alien and a resident of Galway, Ireland, filed
her petition in the probate court of Kootenai county, alleging
her residence and citizenship in the county of Galway, Ire-
land, kingdom of Great Britain, and alleging that she was a
half-sister of John Corbett, deceased, and as such was en-
titled to succeed to his estate under the laws of the state of
Idaho. After due and regular notice was given, a hearing
was had on the petition of Bridget Madden, and the court
sustained a demurrer thereto on the ground that under the
provisions of sec. 5715, Rev. Codes, "no nonresident foreigner
can take by succession, unless he appears and claims such

succession within five years after the death of the decedent
to whom he claims succession," and that accordingly the
petitioner had failed to appear and claim succession within
five years of the death of the intestate, and was therefore
barred by the statute. The latter order and decree was en-
tered on the 23d day of March, 1912. The matter remained
in that condition without further proceeding being taken
until April 6, 1912, when Bridget Madden filed a motion in
the probate court to set aside and vacate the judgment and
decree of March 23d dismissing her petition, upon the
ground that the order of March 23d did not allow her the
right to file an amended petition, and she prayed that the
order and decree might be vacated and that she be permitted
to file an amended petition. The motion was subsequently
heard, and on April 18, 1912, the court made an order per-
mitting her to file an amended petition, which petition was
submitted at the same time and in connection with the mo-
tion. By the amended complaint the petitioner sought to
bring herself within the provisions of sec. 5715 of the Rev.
Codes requiring a nonresident alien to appear and claim the
right to succession within five years of the death of the
decedent. She alleged that Lawrence F. Connolly, John J.
Connolly, William C. Connolly and Ellen Udell each well
knew at the time the estate of John Corbett was distributed
to them that Bridget Madden was the only and sole surviv-
ing heir of John Corbett, deceased, and was rightfully en-
titled to the estate, and that they concealed such fact and
failed to disclose the same to the probate court of Kootenai
county. She further alleged that the first knowledge or
notice that she had of the death of her brother, John Corbett,
was on about the 9th day of April, 1911, when she was ad-
vised of his death and that he had left an estate in Kootenai
county, Idaho, of the value of about $75,000, and that she
thereupon demanded of Lawrence F. Connolly, the adminis-
trator of said estate, all of the property belonging to said
estate:

"That upon receiving the information of the death of
John Corbett, and of the value of the estate left by him,

your petitioner made a demand upon said Lawrence F. Connolly on and prior to the 9th day of April, 1911, for the return and delivery of the property of the estate of John Corbett to your petitioner. That said Lawrence F. Connolly refused to deliver said property to your petitioner, and informed your petitioner that she had no right in or to said property, and that said Lawrence F. Connolly had at all times refused to deliver said property over to your petitioner, or to her attorneys duly authorized.

"That on or about the —— day of December, A. D. 1911, your petitioner, Bridget Madden, appeared in the probate court in and for Kootenai county, state of Idaho, by her attorney Robert H. Elder, and then and there gave notice to the Honorable Bert Reed, probate judge of Kootenai county, state of Idaho, that your petitioner, Bridget Madden, claimed an interest in the property of the estate of John Corbett, deceased, and requested and directed the Honorable Bert Reed, probate judge of Kootenai county, state of Idaho, to notify Robert H. Elder, your petitioner's attorney, if the said Lawrence F. Connolly should apply to said court for a discharge.

"That Bridget Madden, the above-named petitioner, on or about the 14th day of March, A. D. 1911, filed her bill of complaint in the circuit court of the United States in and for the district of Idaho, against Lawrence F. Connolly, individually, and as administrator of the estate of John Corbett, deceased, John J. Connolly, William Connolly, Ellen Udell, and the Empire Mill Co., a corporation, defendants, in said action, and in said bill of complaint Bridget Madden, as plaintiff, claimed to be the heir of John Corbett, deceased, and claimed to be the owner of all the property belonging to the estate of John Corbett, deceased. That in said action your petitioner prays for a decree of said court decreeing your petitioner to be the owner and entitled to the possession of all the property of the estate of John Corbett, deceased. That it is alleged in said bill of complaint that your petitioner is the sole and surviving heir of John Corbett, deceased, and that by said action your petitioner on

or about the 14th day of March, A. D. 1911, appeared in said court and claimed the property of the estate of John Corbett, deceased.

"That thereafter a writ of subpoena was duly issued to said defendants, Lawrence F. Connolly, William Connolly, John J. Connolly, Ellen Udell, and the Empire Mill Company, commanding them to appear in said action and to make answer to allegations in said bill.

"That thereafter Lawrence F. Connolly, individually, and as administrator of the estate of John Corbett, deceased, John J. Connolly, and the Empire Mill Co., appeared in said action.

"That thereafter said action was dismissed without prejudice to another action."

The foregoing allegations are followed by the further allegation that the petitioner has at all times since she learned of the death of her brother claimed all the property belonging to his estate, and that she had at various times demanded possession of said property from Lawrence F. Connolly, the administrator of the estate, and that she thereafter and on the 13th of November, 1911, executed and delivered to William C. Carlyle, E. H. Belden, and W. C. Losey a power of attorney wherein and whereby she authorized her attorneys to collect, sue for, recover and claim all the property of John Corbett, deceased.

The foregoing are the allegations by which the petitioner, Bridget Madden, sought to avoid the provisions and operation of sec. 5715 of the Rev. Codes.

As we view this case, a construction of the provisions of the statute (sec. 5715) will be decisive of the right of Bridget Madden, on the one hand, to a hearing on her amended petition in the probate court and of the petitioners herein, on the other hand, to have a writ of prohibition issue to the probate court. If the petition shows on its face that no claim to the right of succession has been made within the five-year period, then the writ prayed for should issue. The statute (sec. 5715, Rev. Codes) provides as follows:

"Resident aliens may take in all cases by succession as citizens; and no person capable of succeeding under the provisions of this title is precluded from such succession by reason of the alienage of any relative; but no nonresident foreigner can take by succession, unless he appears and claims such succession within five years after the death of the decedent to whom he claims succession."

The foregoing provision of the statute is a part of the law governing probate proceedings, and is found in chap. 14, title 10, part 3, of the Code of Civil Procedure. This chapter is devoted to the specific subject of "Succession," and commencing with sec. 5700, which defines succession, the chapter proceeds step by step to define the interest which passes to heirs and to enumerate the heirs in the order in which they shall be entitled to succeed to the estates of deceased persons and such other matters as naturally pertain to the devolution of estates. Now, under the statute of this state (sec. 18, Rev. Codes), the common law of England, so far as it is not repugnant to or inconsistent with the constitution or laws of the United States in all cases not provided by statute, is the law of this state. At common law aliens could not acquire property by descent. An alien at common law had no inheritable blood, and could not therefore claim through an intestate. (*Norris v. Hoyt,* 18 Cal. 217; 2 Cyc. 90–95, and notes.) It became necessary, if aliens were to be allowed to take property in this state by succession, that the law-making power of the state should alter the common-law rule and declare the policy of the state in relation thereto. The legislature in the exercise of this power enacted sec. 5715, *supra,* and provided that aliens may take in all cases by succession as citizens, but qualified this provision with reference to *nonresident aliens.* In case a nonresident foreigner should claim by succession, he must "appear and claim succession within five years after the death of the decedent to whom he claims succession." The statute is definite and certain as to the date from which the five years begins to run. That date is the date of the death of the decedent. The only room for uncertainty about the statute is what constitutes an

appearance and claiming "such succession." It would seem that where the alien is a nonresident and the property is in the possession and custody either of the state or of a third party who asserts title to the property, as was true in this case, and the alien has never reduced the property to his personal possession, it would be necessary for him to assert some legal claim to the property in an appropriate proceeding in a court of competent jurisdiction to determine and adjudicate his right of succession as prescribed by the probate laws of this state.

Counsel for Bridget Madden, the alien claimant, cite and rely on *State v. Smith,* 70 Cal. 153, 12 Pac. 121, in support of their contention that the words "appear and claim such succession" are satisfied by any appearance in person or by attorney within the state and asserting a right to the property or asserting a right of succession or contracting with reference to the property. A careful study of the case cited convinces us that it does not go to the extent claimed for it by counsel and that it does not support the contention here urged. In that case the decedent was a naturalized citizen of the United States and died intestate in the state of California, leaving an estate of real and personal property. He left no heirs resident in the United States, but did leave one nephew and three nieces in England, his only next of kin. The nephew, John Smith, Jr., came to California and obtained letters of administration after having declared his intention to become a citizen of the United States. He administered upon the estate, reduced it to possession, and caused it to be finally distributed to the next of kin as above indicated. Thereafter the state, through the attorney general, brought an action to declare the estate escheated to the state of California. The supreme court held against the contention made by the state on two grounds: first, that an action by the state having been commenced within the five-year period after the death of the decedent was premature and could not be maintained until after the lapse of the full five-year period; and, second, that the nephew of the decedent and one of the next of kin having come personally to Cali-

fornia and asserted his right and at the same time the right
and claim of the three nieces to the property, and having taken
actual possession of the property, had brought himself and
the other claimants within the meaning and purview of the
statute (sec. 672, Civil Code of Cal.), which required the
alien claimant to "appear and claim" the property within
five years after the death of the decedent. It will there-
fore be seen from a comparison of the facts presented in the
California case with the facts of the case at bar that there
is a wide difference between them, and that the California
case does not furnish authority for the position taken by the
alien claimant in this case.

While not controlling our decision in this case, still it is
worth while to note the difference between our statute and
the California statute on this subject. Sec. 672 of the Civil
Code of California (vol. 2, Deering's Annotated Codes) is a
part of title 2, part 1, division 2, of the Civil Code, and
title 2 is devoted to the subject of "Ownership," and secs.
669 to 672 are devoted to the subject of "Owners." Sec. 672
has specific relation, therefore, to the ownership of property.
It prescribes the five-year limitation for the appearance of
nonresident aliens, and differs from our statute in that it
provides that he "must appear and claim the property
within five years from the time of succession," while our
statute (sec. 5715) found in the Code of Civil Procedure and
in the probate procedure thereof, says: "No nonresident
foreigner can take by succession, unless he appears and claims
such succession within five years after the death of the de-
cedent." This change of wording is significant, and when
taken in connection with the fact that our statute is found in
the probate practice act, while the California statute is found
in the Civil Code dealing with owners and ownership of
property generally, it appears to us that the difference is
significant and worthy of consideration. Under our statute
it would seem that it was intended that the claim and ap-
pearance should be made in the course of the administration
or through the probate court in some manner.

Our statute is not a recognition or extension of any previously existing right a nonresident alien had, but it is rather the fresh grant of a right or a statute of grace which the state confers on aliens. The state might as well declare all such estates escheated rather than allow them to go to a nonresident alien who is otherwise within the recognized line of succession. In this condition of the law, the question of time becomes an essential prerequisite to the right of a nonresident alien to succeed to an estate left by a decedent within this state.

The only question, therefore, remaining to be determined in the case at bar is whether the facts pleaded in the amended petition tendered in the probate court were sufficient to show an appearance and claim to the right of succession on the part of Bridget Madden within the five-year limitation. It is admitted that no appearance of any kind was ever made in the probate court of Kootenai county within the statutory time, and that no appearance was made in any court of competent jurisdiction. It is alleged that an appearance was made in the federal court within the five-year period, and that the action which Bridget Madden sought to prosecute in that court was subsequently dismissed for want of jurisdiction of that court over the subject matter. It has been held, however, by this court, and we think correctly so, that a party who mistakes his remedy and seeks relief in a federal court does not thereby stop the running of the statute of limitations in the state court (*Finney v. American Bonding Co.*, 13 Ida. 534, 90 Pac. 859, 91 Pac. 318; *Mills v. American Bonding Co.*, 13 Ida. 556, 91 Pac. 381; *Morbeck v. Bradford-Kennedy Co.*, 19 Ida. 83, 113 Pac. 89), and the principle involved in this holding is applicable to the case at bar. The filing of the suit in the federal court was clearly not an appearance and claim of the right of succession to this estate as contemplated by the provisions of sec. 5715. On the other hand, the fact that an attorney went to the office of the probate judge and asked to be notified if any further step should be taken in the course of the administration or settlement of the Corbett estate without in fact making any

appearance in the case or appearing in court upon any hearing had in the matter of the estate was clearly not an appearance and claim of the right of succession such as is contemplated by the statute. The same may be said with still greater force and reason in reference to the allegations as to the claims and assertions of right made by her attorneys and agents to the administrator.

It is argued, however, that Bridget Madden alleged fraud on the part of the Connollys in not reporting to the probate court that she was the only surviving heir to the estate and in not advising her of the fact that her brother, John Corbett, was dead, and that he had left an estate which she was entitled to inherit. It may be conceded that the allegations of the petition are true in this respect, and still that admission would not help the case of Bridget Madden. It is not charged that the Connollys through any fraud or otherwise kept her from appearing and asserting her right or that they made any misrepresentations or that they deceived her or misrepresented facts to her. Whatever fraud may have been practiced by them in procuring the estate to be distributed to them could in no way prejudice Bridget Madden if she failed and neglected to appear and assert her right within the five-year period prescribed by the statute. Any fraud practiced by the Connollys in this respect would be a fraud on the state of Idaho to which the property would have escheated, rather than a fraud on Bridget Madden. Had they not been guilty of any fraudulent misrepresentations to the probate court and had they not claimed the property at all and Bridget Madden had still failed to appear, the property would have escheated to the state under the provisions of secs. 5716 and 5717 of the Rev. Codes. They represented, however, that they were the sole surviving heirs and the property was distributed to them. Bridget Madden failed to appear within the statutory time granted her, and consequently lost the right conferred by the state on a nonresident alien to appear and assert any right of succession to the estate. It follows, therefore, that any fraud which may have been practiced could not and did not work any injury upon Bridget Madden. If it

was a fraud upon the state of Idaho, that is met in this case by the fact that the state is not a party to this proceeding, and has at no time been a party to the proceedings in the settlement and distribution of this estate and has asserted no claim to the property of the estate.

It follows from what has been said that upon the face of the petition as presented by Bridget Madden, the time granted her by statute had expired and that the court was without jurisdiction to grant her any relief whatever. Having reached the foregoing conclusion, it becomes unnecessary for us to consider any other question raised in this case. The writ should issue, and it is so ordered.

Stewart, C. J., and Sullivan, J., concur.